FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BONNIE D.,[1]

                    Plaintiff,

    v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

No:  1:21-cv-03147-LRS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 11.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Christopher H. Dellert.  Defendant is represented by Special Assistant United States Attorney Joseph J. Langkamer.  The Court, having reviewed the administrative record and the parties' briefing, is fully

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  *See* LCivR 5.2(c).

ORDER - 1

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is granted and Defendant's Motion, ECF No. 11, is denied.

## JURISDICTION

Plaintiff Bonnie D. (Plaintiff), filed for disability insurance benefits (DIB) on March 29, 2019, alleging an onset date of September 1, 2013, which was amended to September 8, 2016, at the hearing.  Tr. 40, 155-61.  Benefits were denied initially, Tr. 91-93, and upon reconsideration, Tr. 99-105.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 21, 2021.  Tr. 35-63.  On March 25, 2021, the ALJ issued an unfavorable decision, Tr. 12-34, and the Appeals Council denied review, Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1963 and was 57 years old at the time of the hearing.  Tr. *See* Tr. 155.  She has work experience as a caregiver, housecleaner, dog washer, and security guard.  Tr. 43, 50-51.

The walking and standing she did as a security guard aggravated a prior groin injury.  Tr. 46.  She started losing weight, having shakiness, having severe migraines, had no energy, her joints hurt, she had difficulty with her bladder and

ORDER - 2

bowel, and back pain. Tr. 46. She had rheumatoid arthritis, nodules on her throat, and emphysema. Tr. 46. Her husband did all the household chores. Tr. 47-48. She had difficulty standing up and getting around. Tr. 48. The pain in her back with twisting and moving was unbearable. Tr. 48. She has COPD which causes shortness of breath. Tr. 52-53. She had difficulty focusing and remembering things. Tr. 53.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

ORDER - 3

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20

ORDER - 4

C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing

such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant

is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is

disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful

activity during the period from her alleged onset date of September 1, 2013, through

her date last insured of June 30, 2017.  Tr. 17.  At step two, the ALJ found that

through the date last insured, Plaintiff had the following severe impairments:

degenerative disc disease of the lumbar spine, chronic obstructive pulmonary

disease, and fibromyalgia.  Tr. 18.  At step three, the ALJ found that through the

date last insured, Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments.  Tr. 20.

The ALJ then found that, through the date last insured, Plaintiff had the

residual functional capacity to perform light work with the following additional

limitations:

> She was limited to occasional climbing of ladders, ropes, and
> scaffolds, balancing, stooping, kneeling, crouching and crawling.
> She must avoid concentrated exposure to excessive vibration,
> hazards, temperature extremes, and pulmonary irritants.

Tr. 22.

At step four, the ALJ found that through the date last insured, Plaintiff was

capable of performing past relevant work.  Tr. 27.   Thus, the ALJ concluded that

Plaintiff was not under a disability, as defined in the Social Security Act, at any time

ORDER - 7

from September 1, 2013, the alleged onset date, through June 30, 2017, the date last insured.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 10. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly considered the medical opinion evidence; and

2.  Whether the ALJ properly considered Plaintiff's subjective allegations. ECF No. 10 at 2.

## DISCUSSION

**A.    Medical Opinions**

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.[2]

---

[2] Plaintiff argues the "specific and legitimate" standard continues to apply despite the new regulations.  ECF No. 12 at 2-6.  The Ninth Circuit has concluded that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard.  *Woods v. Kijakazi*, 32 F.4th 785, 790-92 (9th Cir. 2022).  Plaintiff discusses *Woods* but appears to overlook the Court's conclusion that, "[o]ur requirement that ALJs provide 'specific and legitimate reasons' for

ORDER - 8

Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

### 1. Susan Taylor, ARNP

In January 2019, Ms. Taylor submitted a letter describing Plaintiff's current health condition and health history. Tr. 650-51. She noted Plaintiff had been a patient for a long time and has "multiple severe, disabling, chronic, recurring medical conditions," and listed the following diagnoses: degeneration of the lumbosacral discs, spinal stenosis in the cervical region, fibromyalgia, chronic obstructive pulmonary disease, insomnia, stage II chronic kidney disease, vitamin D deficiency, chronic fatigue, severe migraines, vision problems, hearing problems,

---

rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations." *Id.* at 792.

ORDER - 9

major depression, hot flashes, stress incontinence, carpal tunnel syndrome, arthritis, bowel incontinence, cyclic vomiting, chronic pain, apical lung scarring, family history of Agent Orange exposure, and a history of Barrett's esophagus. Tr. 650. Ms. Taylor opined that Plaintiff is unable to work because her conditions interfere with her ability to remember daily tasks, lift, bend, carry, walk, sit, stand, attend appointments on time, maintain hygiene, communicate with others, and participate in meaningful work. Tr. 650. She also indicated that Plaintiff would be unable to keep appointments. Tr. 650.

Plaintiff argues the ALJ improperly failed to consider Ms. Taylor's statement. ECF No. 10 at 16. The ALJ must articulate how persuasive it finds "all of the medical opinions" from every medical source. 20 C.F.R. § 404.1520c(b). Defendant argues Ms. Taylor's statement does not constitute a medical opinion and therefore the ALJ did not need to provide any analysis. ECF No. 11 at 17 (citing 20 C.F.R. § 404.1520b(c)). A medical opinion is a statement from a medical source about what a claimant can still do despite his or her impairments and whether the claimant has impairment-related limitations or restrictions in the ability to perform the physical, mental, environmental, or other demands of work activities. 20 C.F.R. § 404.1513. Ms. Taylor's statement that Plaintiff's symptoms interfere with certain aspects of her physical and mental functioning at least arguably constitutes a medical opinion. However, the ALJ did not discuss or reference her statement anywhere in the decision. Plaintiff's counsel referred Ms.

Taylor's statement twice during the hearing, so the ALJ was on notice that the statement was at least perceived by Plaintiff to be a medical opinion.  Tr. 49, 62. Under these circumstances, the ALJ's failure to comment on Ms. Taylor's statement or reference it in the decision makes unclear whether the ALJ considered the statement.  This matter must be remanded so the ALJ can consider Ms. Taylor's statement.

### 2. Thomas B. Curtis, M.D.

In January 2021, Dr. Curtis completed a "Multiple Impairment Residual Functional Capacity Report" form and listed chronic pain as Plaintiff's primary diagnosis with other diagnoses of lumbar degenerative disk and joint disease, multiple joint arthritis, cervical spondylosis, peripheral neuropathy, depression, emphysema, and stress.  Tr. 821-27.  He opined that Plaintiff could sit for one hour and stand/walk for one hour in an eight-hour workday, that her sitting tolerance is about 10 minutes at a time, that she could occasionally lift 0-5 pounds, and that she had moderate limitations for use of the upper extremities.  Tr. 823-25.  He indicated that work would cause her symptoms to increase; that pain fatigue or other symptoms constantly interfere with attention and concentration; that Plaintiff is incapable of even low stress work; that she needs unscheduled 20-minute breaks several times and hour; and that Plaintiff would always miss work.  Tr. 825-26.

The ALJ found Dr. Curtis' opinion to be unpersuasive.  Tr. 26-27.  First, the ALJ found the January 2021 opinion to be unpersuasive because it was formed more

than four years after the date last insured. Tr. 27. However, the ALJ may not reject an opinion on that basis alone; the question is whether the opinion related back to the relevant period. "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted); *see Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of ... pre-[date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225); *see also Svaldi v. Berryhill*, 720 F. App'x 342, 343-44 (9th Cir. 2017) (indicating that medical opinion issued after the DLI should be considered because it referred to the chronic condition and symptoms during the relevant period); *Morgan v. Colvin*, No. 6:12-CV-1235-AA, 2013 WL 6074119, at *10 (D. Or. Nov. 13, 2013) (affirming rejection of a treating medical opinion when it was completed years after the DLI and was not offered as retrospective analysis); *Capobres v. Astrue*, No. CV 1:09-682-REB, 2011 WL 1114256 (D. Idaho Mar. 25, 2011) (rejecting opinion because it was outside relevant time period where the opinion was not offered as retrospective to the relevant time

period).  This was not a legitimate basis for rejecting Dr. Curtis' opinion without

evaluating whether it related back to the relevant period.

The ALJ also found the physical and mental imitations assessed by Dr. Curtis

"contrast[] sharply" with Plaintiff's essentially normal presentation at appointments,

statements about improved symptoms and functioning with medication, and her

daily activities and work activity as a security guard.  Tr. 27.  However, the ALJ did

not explain how supportability and consistency were considered as required by the

regulations.  20 C.F.R. § 404.1520c(b)(2).  The ALJ's explanation for finding Dr.

Curtis' opinion unpersuasive is therefore legally insufficient.   On remand, the ALJ

should reevaluate Dr. Curtis' opinion and explain how supportability and

consistency factor into the persuasiveness of the opinion.

**B.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that her impairment could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

ORDER - 13

1     Second, "[i]f the claimant meets the first test and there is no evidence of

2  malingering, the ALJ can only reject the claimant's testimony about the severity of

3  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5  citations and quotations omitted).  "General findings are insufficient; rather, the ALJ

6  must identify what testimony is not credible and what evidence undermines the

7  claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas v.*

8  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

9  determination with findings sufficiently specific to permit the court to conclude that

10  the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

11  convincing [evidence] standard is the most demanding required in Social Security

12  cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

13  *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

14     In assessing a claimant's symptom complaints, the ALJ may consider, *inter*

15  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16  claimant's testimony or between his or her testimony and his or her conduct; (3) the

17  claimant's daily living activities; (4) the claimant's work record; and (5) testimony

18  from physicians or third parties concerning the nature, severity, and effect of the

19  claimant's condition.  *Thomas*, 278 F.3d at 958-59.

20     The ALJ gave five reasons for giving less weight to Plaintiff's symptom

21  allegations:  (1) her allegations are out of proportion to the objective findings; (2)

ORDER - 14

Plaintiff continued smoking cigarettes and marijuana despite the recommendation of her treating providers that she stop; (3) the longitudinal record does not corroborate Plaintiff's symptom claims; (4) Plaintiff stopped working for reasons other than her impairments; and (5) Plaintiff's use of a wheelchair is inconsistent with the record. Tr. 23-26.

First, in evaluating the objective evidence, Plaintiff asserts the ALJ incorrectly reported the results of her March 2020 MRI of the lumbar spine.  ECF No. 10 at 7. The ALJ stated the March 2020 MRI showed "mild to moderate degenerative disc disease of the lumbar spine but only mild stenosis and mild abutment of sacroiliac (SI) nerve roots."  Tr. 23 (citing Tr. 829-30, 1063-64).  The MRI findings actually state: "[m]ild to moderate lower lumbar spine degenerative changes, including mild central canal stenosis at L5-S1 with disc abutment of bilateral descending S1 nerve roots."  Tr. 829.  Plaintiff is correct that "mild" is not specifically used to describe the disc abutment of the nerve roots, although it would certainly be reasonable to read "mild" as modifying the entire finding of "canal stenosis at L5-S1 with disc abutment of bilateral descending S1 nerve roots."  However, since this matter is remanded on other grounds, the ALJ should reevaluate this finding to ensure that the evidence is not overstated or misstated.

Plaintiff also argues the ALJ improperly considered the lack of pneumothorax in evaluating a chest CT.  ECF No. 10 at 8.  The ALJ noted that March 2014 chest images showed significant bronchial wall thickening and pleural effusion but no

pneumothorax.  Tr. 23 (citing Tr. 445).  The CT report includes findings of "[b]ronchial wall thickening is noted throughout both lungs," and "[t]here is no significant pleural effusion.  No pneumothorax is seen."  Tr. 445.  Plaintiff argues that a lack of pneumothorax is an insignificant finding since she did not allege a collapsed lung.  ECF No. 10 at 8.  Although in the context of all of the findings cited by the ALJ regarding Plaintiff's lung condition, Tr. 23 (citing 436-38, 449, 515, 522-23, 635, 667-68), this is a nominal finding and not inaccurate, Plaintiff's point is well-taken.  On remand, the ALJ should ensure that irrelevant findings are not used to bolster an otherwise well-supported conclusion.  Additionally, the ALJ inaccurately reported pleural effusion was found when "no significant pleural effusion" was noted.  Tr. 23, 445.  The ALJ should reevaluate the objective evidence to make sure it is accurately considered.

Plaintiff also argues the ALJ failed to properly consider her fibromyalgia symptoms.  ECF No. 10 at 10.  Defendant argues that the ALJ discussed Plaintiff's pain, ECF No. 11 at 9, but the ALJ did not consider the unique nature of fibromyalgia and did not discuss SSR 12-2p.  *See* Social Security Ruling 12-2p, 2012 WL 3104869 (effective July 25, 2012).  Fibromyalgia is a disease that eludes objective measurement.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'"  *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).  Normal objective examination results can be "perfectly consistent with debilitating

1   fibromyalgia." *Id.* at 666.  While Defendant is correct that the ALJ's discussion of
2   muscle strength, sensory functions, and reflexes could be relevant to Plaintiff's other
3   conditions, ECF No. 11 at 9, on remand, the ALJ should explain how fibromyalgia
4   was evaluated in light of its unique characteristics.

5       Plaintiff also argues the ALJ's "bald assertion" that Plaintiff's allegations
6   were out of proportion to the objective findings was not specific enough.  ECF No.
7   10 at 6 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).  This Court
8   concludes the ALJ's discussion of the evidence is specific enough to allow the
9   reader to determine what evidence was considered in evaluating Plaintiff's
10  symptom claims.  As the *Lambert* court noted, "Our cases do not require ALJs to
11  perform a line-by-line exegesis of the claimant's testimony, nor do they require
12  ALJs to draft dissertations when denying benefits."  *Id.* at 1277.  However, since
13  the ALJ must reassess the objective evidence as discussed above, the ALJ should
14  ensure that the findings regarding objective evidence as it relates to Plaintiff's
15  testimony are analytical and not just "non-specific conclusions" or a "relatively
16  detailed overview" of the evidence.  *Id.* at 1277-78; *see Lewin v. Schweiker*, 654
17  F.2d 631, 635 (9th Cir. 1981) ("(A)n examiner's findings should be as
18  comprehensive and analytical as feasible . . . so that a reviewing court may know
19  the basis for the decision." (quoting *Baerga v. Richardson*, 500 F.2d 309 (3d Cir.
20  1974)).

21

1    Second, the ALJ found that Plaintiff's continued smoking despite

2  recommendations that she quit suggests that her COPD was not as limiting as

3  alleged and reflects an unwillingness to comply with treatment.  Tr. 24.  It is

4  unsettled in the Ninth Circuit whether a failure to stop smoking is a reasonable basis

5  for giving less weight to a claimant's symptom claims.  *See Bray v. Comm'r of Soc.*

6  *Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009) (declining to find error in

7  assessing claimant's continued smoking in the credibility determination because four

8  other independent bases supported the credibility determination, but noting that "[i]t

9  [was] certainly possible that [claimant] was so addicted to cigarettes that she

10  continued smoking even in the face of debilitating shortness of breath and acute

11  chemical sensitivity") (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190,

12  1197 (9th Cir. 2004)); *Shramek v. Apfel,* 226 F.3d 809, 812–13 (7th Cir. 2000)

13  (noting, in dicta, that nicotine's addictive properties made it "extremely tenuous" to

14  discredit a claimant's description of her impairments based on the claimant's

15  continued smoking).  As Defendant observes, district court cases in the Ninth Circuit

16  are mixed.  *See e.g.*, *Heather E. v. Comm'r of Soc. Sec. Admin.*, 1:20-CV-3235-

17  TOR, 2021 WL 9758807 (E.D. Wash., December 13, 2021) (finding failure to stop

18  smoking despite pulmonary symptoms was not an example of noncompliance with

19  treatment undermining Plaintiff's credibility); *McKenzie v. Kijakazi*, No. 1:20-cv-

20  0327-JLT, 2021 WL 4279015, *9-10 (E.D. Cal. Sept. 21, 2021) (finding failure to

21  quit smoking offered "limited support" to the ALJ's rejection of Plaintiff's

ORDER - 18

statements); *Jones v. Colvin*, 1:14-cv-01991-JLT, 2016 WL 816484, *8 (E.D. Cal. March 2, 2016) (finding that failure to quit smoking supported the ALJ's adverse credibility determination because Plaintiff had not explained his failure to comply with treatment plan to quit).  Thus, while it may not be error for the ALJ to consider Plaintiff's failure to stop smoking in evaluating her symptom claims, neither is it a particularly compelling reason.

Third, the ALJ found the longitudinal record does not corroborate Plaintiff's symptom claims.  Tr. 24-25.  Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)  The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record.  Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (effective October 25, 2017).  In light of the other errors, including overlooking Ms. Taylor's statement, the ALJ should also reassess the longitudinal record to ensure that findings are supported by substantial evidence.

Fourth, the ALJ found Plaintiff stopped working for reasons other than her impairments.  Tr. 25.  An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluating symptom claims.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted that Plaintiff worked

ORDER - 19

as a security guard eight hours a day, one day per week from January 2015 through December 2016.  Tr. 185, 189, 198.  Plaintiff reported that she stopped working on December 31, 2016, due to her conditions.  Tr. 197.  However, the ALJ noted that in December 2016, Plaintiff told her doctor that medication reduced her pain and helped her work security, but that "work has been . . . slow."  Tr. 566-67.  The ALJ inferred that Plaintiff stopped working due to a reduction in work rather than because of disabling impairments.  Tr. 26.

Plaintiff argues the ALJ "confused the timeline" because she alleged disability beginning September 2013 and her part-time security guard work began in January 2015.  ECF No. 10 at 13.  Plaintiff and the ALJ both overlooked that Plaintiff amended the alleged onset date September 8, 2016, at the hearing.  Tr. 40.  On remand, the ALJ should address the amended alleged onset date and if it is not applicable, explain that finding.  Plaintiff also argues the reason she stopped working as a security guard is not relevant because of minimal earnings and high doses of opioids.  ECF No. 10 at 14.  Nevertheless, the regulations provide that employment, even work that is not substantial gainful activity, during a period of claimed disability may be probative of a claimant's ability to work.  20 C.F.R. § 404.1571; *see Bray*, 554 F.3d at 1227.  The ALJ did not err by considering Plaintiff's work as a security guard or in making an inference supported by the record to the extent Plaintiff worked during a period of alleged disability.

ORDER - 20

Fifth, ALJ found Plaintiff's use of a wheelchair is inconsistent with the record.  Tr. 25.  Non-prescribed use of a wheelchair or cane may be considered in evaluating a claimant's subjective expression of limitations.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  The ALJ noted that Plaintiff testified at the hearing in 2021 that she needs a wheelchair, Tr. 57, and in 2019 she reported that she used a walker and a cane, Tr. 215, but there is no evidence in the record before the date last insured that she was prescribed a wheelchair or other assistive device or that she medically required one.  Tr. 26.  The ALJ noted that in September 2014, Plaintiff stated she walked for exercise (Tr. 582); in January 2015 she was observed ambulating without difficulty (Tr. 396); in July 2015, Plaintiff denied issues with walking, balance, or feeling unsteady, (Tr. 341); and in January and April 2017, Plaintiff demonstrated normal gait, station, and posture (Tr. 493, 498).  To the extent that Plaintiff alleged she needed an assistive device before the date last insured, substantial evidence appears to support the ALJ's conclusion.  However, it is unclear that when Plaintiff reported using assistive devices, she intended to reference the period before her date last insured of June 30, 2017.  The ALJ cited no records suggesting Plaintiff was using an assistive device without a prescription or against medical advice during the relevant period.  As discussed by the ALJ, this reasoning is not supported by substantial evidence and does not undermine Plaintiff's symptom claims for the relevant period.

ORDER - 21

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Plaintiff requests that the matter be remanded for further proceedings, ECF No. 10 at 20, and the Court finds that remand is appropriate. On remand, the ALJ should consider the opinion of Ms. Taylor and Dr. Curtis and provide legally sufficient reasons in evaluating the persuasiveness of the opinions. The ALJ should also reevaluate Plaintiff's symptom claims in accordance with this order.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 21, 2023.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 22